John L. SUOZZI, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 95–395.

United States Court of Veterans Appeals.

June 9, 1997.

Felicia Pasculli and Edward A. Moritz, Huntington, NY, were on the briefs for the appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; David W. Engel, Deputy Assistant General Counsel; and Andrew J. Waghorn, Washington, DC, were on the brief for the appellee.

Before NEBEKER, Chief Judge, and FARLEY and HOLDAWAY, Judges.

NEBEKER, Chief Judge:

The appellant, John L. Suozzi, appeals a January 7, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which found that new and material evidence sufficient to reopen his claim for service connection for post-traumatic stress disorder (PTSD) had not been submitted. Upon consideration of the record on appeal and the briefs of the parties, the Court will reverse the Board's decision and remand the matter, because new and material evidence was presented which corroborates the appellant's account of events which, according to his physicians, ultimately led to his PTSD.

## I. FACTS

Mr. Suozzi served on active duty in the U.S. Army from May 1966 to May 1968, including an eleven-month tour of duty in Vietnam. Record (R.) at 79. While in Vietnam, he served with an infantry company as a company clerk; his primary military occupational specialty (MOS) was clerk typist. R. at 79. Since all evidence of record must be considered in the threshold determination of whether reopening is required (*see Evans v. Brown*, 9 Vet.App. 273, 282–84 (1996)), we detail that evidence.

Mr. Suozzi filed his initial claim for service connection for PTSD in December 1987. R. at 98. To substantiate his claim, he submitted hospital medical records which revealed a diagnosis of "PTSD, chronic and severe." R.

at 107–08. Another hospital notation stated that "aspects of [Mr. Suozzi's] anger seem directly related to his experiences in and after Vietnam—also [complains of] severe flashbacks, and hypervigilence as well as insomnia, guilt, and preoccupation with combat experiences." R. at 112. The report concluded that Mr. Suozzi presented a "fully developed picture of PTSD." *Ibid.* A February 1988 progress note reported, as one of the factors contributing to his severe PTSD, the experience of a hostile attack which had left seventeen members of the veteran's company dead. R. at 115. A March 2, 1988, VA examination similarly diagnosed the veteran with severe PTSD (R. at 137–38), as did a second VA examination in June 1988 (R. at 145). The latter examination which confirmed the PTSD diagnosis based its conclusion on the findings that "(1) he had predisposing traumatic experiences, (2) clinical symptoms are related to those experiences, (3) he did not have clinical symptoms, prior to the experiences and (4) he had vivid, continuous flashbacks and nightmares, related to the experiences." R. at 145. The VA regional office (RO) denied his claim in July 1988, concluding

> [Service connection] for PTSD is denied as there is no evidence of any objective stressor in service. Further, veteran does not describe in the clinical exam. any specific objective stressor which he experienced in Vietnam. Veteran's military occupation, clerk typist, did not indicate any direct participation in any combat situation which could have precipitated the requisite stressor.

R. at 150. The RO received Mr. Suozzi's Notice of Disagreement (NOD) as to that decision in October 1988. R. at 154. In his appeal to the Board, dated January 2, 1989, the veteran recalled the events of May 2, 1967:

> At approximately 2AM, Company B came under heavy attack taking heavy casualties. I remained on radio all night trying to help in anyway I could, but it was useless. They had been hit so hard that most of the company was badly wounded. Casualty reports were coming in from all sectors, and all reports were bad. The final count was 17 killed and 56 wound-

ed.... Later that day, choppers returned to our base camp with the equipment of the dead and wounded. Everything was still covered with blood and dirt, and the smell of "death" was all around us.

> By late afternoon, the choppers began to bring in the body bags. A [Lieutenant] Suedkamp and I had to identify the bodies of our friends.... Both the [lieutenant] and I had great difficulty in making the identifications, and eventually Lt. Suedkamp broke down when it came time to identify 1st Sgt. Elliot, to whom he was very close.... I became very sick and began to vomit. I remember being sick for days after this.

R. at 162. His service medical records confirm that he received medical attention for several days thereafter for vomiting, headaches, diarrhea, cramps and fever. R. at 34–35. The Board denied his claim in May 1989, stating that in order to grant "service connection for [PTSD], the evidence of record must show that the veteran was exposed to a verifiable stressor during service" however "[i]n the absence of documentation verifying claims initially made more than 20 years after the alleged events, service connection for [PTSD was] not warranted." R. at 169.

A VA mental hygiene clinic progress note dated February 1990 reported the following:

> There were probably [four] separate incidents that played a significant role in being the major objective stressors in this [veteran's] profile of PTSD. The major symptom of [Mr. Suozzi's] PTSD is psychic numbing brought on by [four] overwhelming combat events ... [One] incident happened in May [19]67. [Mr. Suozzi] was a radio operator under very grueling combat conditions. [He] filed [the] morning report of 17 killed and 56 wounded. [He] bagged dead bodies, identifying them[—]at least attempting to. These events he has nightmares about and flashbacks about. That night his company was under fire all night.

R. at 184, 187–88.

In June 1991, the RO denied an attempt to reopen his claim. R. at 225. Mr. Suozzi subsequently submitted a statement from Linda A. Addotta (a long-time acquaintance

of the veteran), and medical records from a treatment center in New York which documented his participation in a PTSD support group. R. at 221, 210–14. The RO confirmed its previous denial stating, "[B]ased on the veteran's military occupation specialities of being a clerk/typist and a personnel specialist, there is still no evidence of an objective stressor necessary for the granting of [service connection] for PTSD." R. at 231.

With his August 1991 NOD to the Board, Mr. Suozzi attached a copy of his company's morning report for May 2, 1967, and a radio log, both of which appear to corroborate the veteran's account of the events of that day. R. at 83–96, 292. The morning report was signed by Lieutenant Suedkamp, and listed a 1st Sergeant Elliot among the soldiers killed-in-action. R. at 292. According to the radio log supplied by the Army's Joint Environmental Task Force, at approximately 2 a.m., the veteran's company "came under big attack. We are getting attacked from all sides. . . . We have taken a few ca[su]alties, do not know exactly how many. . . . They are throwing mortar, rifle, grenades, auto[-]weapon fire, single shots, everything. It is bad here. We have taken a lot of casualties. One of my elements reports almost all of his men injured." R. at 83. The logs go on to describe that, for the remainder of the day, rescue, evacuation, and resupply efforts were orchestrated and conducted by the personnel in charge. R. at 83–96. While the logs do not specifically name the veteran, his superiors, First Lieutenant Frank Oakley and Lieutenant Colonel Richard Zastro, are named in several entries. Mr. Suozzi also included a copy of a nomination for a Bronze Star, written by First Lieutenant Oakley and Lieutenant Colonel Zastro, whose accompanying citation noted "for meritorious service . . . in military operations against a hostile force. . . . On emergency situations involving casualties his quick thinking and mental ability established reporting procedures accurately, quickly and without error." R. at 298.

In the January 1993 BVA decision here on appeal, the Board affirmed the RO's finding that new and material evidence had not been presented. R. at 5–11. Regarding the PTSD diagnoses, the Board stated that they "ha[d] been based on a history of combat stressors which is not otherwise confirmed by the record." R. at 9. As to the radio log, the Board concluded that while the veteran's company had been under attack, "there is no indication that the veteran was involved in this attack, and certainly no support for his contention that he handled the radio operations, prepared a runway, bagged and identified bodies, or was otherwise integrally involved with the sequence of events." *Ibid.* The Board further concluded that "since the additional evidence does not show the veteran was exposed to stressors in service, the evidence is not material, and the claim remains denied." R. at 10.

## II. ANALYSIS

■ The determination of whether evidence is "new and material" is a question of law that this Court reviews de novo. 38 U.S.C. § 7261(a)(1); *Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992).

> "New" evidence is that which is not merely cumulative of other evidence of record. "Material" evidence is that which is relevant to and probative of the issue at hand and which, as this Court stated in *Colvin* [*v. Derwinski,* 1 Vet.App. 171, 174 (1991) ], . . . must be of sufficient weight or significance (assuming its credibility) that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome.

*Cox v. Brown,* 5 Vet.App. 95, 98 (1993). Under 38 C.F.R. § 3.304(f) (1996),

> eligibility for a PTSD service-connection award . . . requires the presence of three elements: (1) A current, clear medical diagnosis of PTSD (presumed to include the adequacy of the PTSD symptomatology and the sufficiency of a claimed in-service stressor, . . . ); (2) credible supporting evidence that the claimed in-service stressor actually occurred; and (3) medical evidence of a causal nexus between current symptomatology and the specific claimed in-service stressor.

*Cohen v. Brown,* 10 Vet.App. 128, 138 (1997). As to the first such element, Mr. Suozzi has a

current and clear medical diagnosis of PTSD. The Court takes this opportunity to note that our recent *Cohen* opinion expressly clarified the now-individualized standard for determining the sufficiency of the claimed stressor. *Cohen,* 10 Vet.App. at 141–42 (noting that DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, as revised in 1994 fourth edition (DSM IV), criteria for determining sufficiency of stressors is "no longer based solely on usual experience and response but are individualized (geared to the specific individual's actual experience and response)"). As to the third PTSD service-connection element, VA physicians have opined that his military experience is directly related to his current condition, i.e., he has medical evidence of a causal nexus between the current symptomatology and the specific claimed in-service stressor. Therefore, in order to reopen his claim for service connection, there must be competent evidence of record as to the second PTSD element: corroboration that the asserted in-service stressor(s) actually occurred.

■ Mr. Suozzi argues that he has offered corroborating evidence that his claimed in-service stressor actually occurred. As this Court held in *West v. Brown,* 7 Vet.App. 70, 76 (1994), where "the veteran did not engage in combat with the enemy ... the veteran's lay testimony, by itself, will not be enough to establish the occurrence of the alleged stressor." This occurrence of the claimed stressor must be corroborated by independent evidence of record. *Ibid.* In his effort to reopen, he has submitted the radio logs of transcripts describing the events his company endured on May 2, 1967. The logs are independent descriptions of one of the events that the veteran asserts, and his doctors agree, caused his PTSD, and they appear to corroborate his account of the attack. Further, the morning reports, signed by Lieutenant Suedkamp, who was referenced in the veteran's January 1989 statement (*ante* at 308; R. at 162), also tend to substantiate the veteran's account of events.

Before this Court, Mr. Suozzi argues that the Board, in its pre-*Cohen* decision, erred in not reopening his claim for entitlement to service connection for PTSD because he had submitted new and material evidence, corroborating the occurrence of in-service stressors. Appellant's Brief at 9. The Secretary argues that the newly presented evidence demonstrates only that Mr. Suozzi's "company received heavy casualties during a Vietnamese attack, ... [not] that [the veteran] was integrally involved in that attack or the subsequent effort to identify American soldiers killed in action." Secretary's Brief at 10. The Secretary's position is self-defeating. The Board denied reopening because there was no confirmation of an in-service stressor in the record. Previously, the Board had denied the claim "[i]n the absence of documentation verifying" the occurrence of the alleged stressor.

Contrary to the Secretary's contention, the evidence last presented shows more than that the veteran's company received heavy casualties. It reveals a version of events which, when viewed most favorably to the claimant, could support Mr. Suozzi's account. The evidence presented new information confirming a stressor related to after-action events relative to Mr. Suozzi's participation in casualty identification. That a company clerk would assist in casualty identification in the wake of a hostile attack is a valid inference to be drawn from the newly presented evidence.

The Secretary argues that because the veteran is himself not specifically named in the logs, they are insufficient to corroborate his account of the claimed stressor. The Secretary appears to suggest that Mr. Suozzi was somehow detached and protected from the events that affected his company, but such a conclusion is not supported by the record or by sufficient reasons or bases in the Board's decision. *See* 38 U.S.C. § 7104(d)(1); *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990) (Board decision must be supported by adequate statement of reasons or bases). Neither the Secretary nor the Board has offered an explanation as to why the veteran's MOS, alone, would preclude him from being subject to the described stressful events. Indeed, the Secretary would have the Court read the record to glean that Mr. Suozzi played no role during or after an event that wounded fifty-six and killed seventeen members of the

veteran's own company. That invitation must be rejected. *Cf. Dizoglio v. Brown*, 9 Vet.App. 163, 166 (1996) ("engagement in combat is not necessarily determined simply by reference to the existence or nonexistence of certain awards or MOSs"). The Secretary, in insisting that there be corroboration of every detail including the appellant's personal participation in the identifying process, defines "corroboration" far too narrowly. The veteran has offered new and independent evidence of stressful events and that evidence implies his personal exposure. The Court holds that new and material evidence has been presented, and therefore the claim must be reopened.

■ Accordingly, the Court holds that the morning reports, the radio logs, and the facts described in the Bronze Star nomination are new because they were not previously of record, and they are material because, in a readjudication of the claim, the evidence favorably corroborates the veteran's alleged in-service stressor, the lack of which is the reason the claim was previously denied. When taken into consideration with all the evidence of record, there is a reasonable possibility of a changed outcome. *See Evans v. Brown*, 9 Vet.App. 273, 282–84 (1996). Moreover, given the facts of this case, once the claim is reopened, the benefit of the doubt rule may take on heightened significance. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 53–54 (1990); *see also Williams (Willie) v. Brown*, 4 Vet.App. 270 (1993) (where "there is significant evidence in support of an appellant's claim, the Board must provide a satisfactory explanation as to why the evidence was not in equipoise" ).

### III. CONCLUSION

The Board's January 7, 1993, decision determining that new and material evidence was not presented to reopen the veteran's claim is REVERSED, and the claim is REMANDED for the Board to "review the former disposition of the claim." 38 U.S.C. § 5108. The Court notes that on review of the former adjudication, the veteran will be free to submit additional evidence and argument. *See Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992). Further, VA is bound to follow the controlling precedential decisions of this Court, and generally must apply regulatory provisions most favorable to the veteran. *See Cohen, supra; see also Karnas v. Derwinski*, 1 Vet.App. 308, 312–13 (1991) ("where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to appellant should ... apply unless Congress provided otherwise or permitted the Secretary ... to do otherwise and the Secretary did so"). On remand, should the Board determine that the evidence is in equipoise on the question of corroboration of asserted stressor(s), "service connection must be awarded for PTSD." *Cohen*, 10 Vet. App. at 151. Finally, the Court deems it appropriate to remand the claim for Board review of the "former disposition" under section 5108, rather than to decide now whether the claim for service connection is established as a matter of law. That issue may have to be addressed in the event service connection remains denied after BVA review, if an appeal to this Court is taken.