Citation Nr: 1132132 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 08-13 928 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

1. Entitlement to service connection for a psychiatric disability.

2. Entitlement to service connection for peripheral neuropathy of the lower extremities.


REPRESENTATION

Veteran represented by: Missouri Veterans Commission


WITNESSES AT HEARING ON APPEAL

Veteran, M. M. and A. M.



ATTORNEY FOR THE BOARD

M. Taylor, Counsel


INTRODUCTION

The Veteran had active service from January 1966 to May 1969. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri.

This case has previously come before the Board. In January 2010, the matter was remanded to the agency of original jurisdiction (AOJ) for additional development. The case has been returned to the Board for further appellate review. 

The Veteran was afforded a hearing before a hearing officer at the RO in September 2008. A transcript of the hearing has been associated with the claims file. 


FINDING OF FACT

The competent and probative evidence does not establish a peripheral neuropathy in the lower extremities. 


CONCLUSION OF LAW

Peripheral neuropathy of the lower extremities was not incurred or aggravated during service and may not be presumed to have been incurred by such service, and is not proximately due to or the result of service-connected disease or injury. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1116, (West 2002); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309, 3.310 (2010).


REASONS AND BASES FOR FINDING AND CONCLUSION

Criteria

Service connection may be granted for disability resulting from disease or injury incurred or aggravated in service. 38 U.S.C.A. §§ 1110, 1131 (West 2002 & Supp. 2009). Service connection basically means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces. 38 C.F.R. §§ 3.303, 3.304 (2010). Service connection may be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. If chronicity in service is not established, a showing of continuity of symptoms after discharge is required to support the claim. Service connection may be granted for any disease diagnosed after discharge, when all of the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303.

A chronic, tropical, or prisoner-of-war related disease, or a disease associated with exposure to certain herbicide agents, listed in 38 C.F.R. § 3.309 will be considered to have been incurred in service under the circumstances outlined in this section even though there is no evidence of such disease during the period of service. No condition other than the ones listed in 38 C.F.R. § 3.309(a) will be considered chronic. 38 U.S.C.A. §§ 1101, 1112, 1113, 1116; 38 C.F.R. § 3.307(a).

A veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. The last date on which such a veteran shall be presumed to have been exposed to an herbicide agent shall be the last date on which he or she served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975. "Service in the Republic of Vietnam" includes service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. 38 U.S.C.A. § 1116(f); 38 C.F.R. § 3.307(a)(6)(iii).

For purposes of establishing service connection for a disability resulting from exposure to a herbicide agent, a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962 and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during service. 38 U.S.C.A. § 1116(f). These diseases include chloracne or other acneform disease consistent with chloracne, type II diabetes, Hodgkin's disease, ischemic heart disease, all chronic B-cell leukemias, multiple myeloma, Non-Hodgkin's lymphoma, acute and subacute peripheral neuropathy, Parkinson' disease, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, or trachea), AL amyloidosis, and soft-tissue sarcoma. 38 C.F.R. § 3.309(e) (2010); see Notice, 75 Fed. Reg. 168, 53202-16 (Aug. 31, 2010).

The diseases listed at 38 C.F.R. § 3.309(e) shall have become manifest to a degree of 10 percent or more at any time after service, except that chloracne or other acneform disease consistent with chloracne, porphyria cutanea tarda, and acute and subacute peripheral neuropathy shall have become manifest to a degree of 10 percent or more within a year, and respiratory cancers within 30 years, after the last date on which the veteran was exposed to an herbicide agent during active military, naval, or air service. 38 C.F.R. § 3.307(a)(6)(ii).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Analysis

Initially, the Board finds substantial compliance with the January 2010 remand. The Veteran was afforded a VA examination, additional treatment records have been associated with the claims file, to the extent possible, and the claim was readjudicated. Thus, the Board will proceed with a decision in regard to the matter on appeal.

The Veteran asserts he has a peripheral neuropathy of the lower extremities as a result of service. Having reviewed the record, the Board finds service connection is not warranted. 

In this case, the Board finds the competent and probative evidence does not establish the Veteran has or has had a peripheral neuropathy of the lower extremities at any time during the relevant period. Absent a current disability, service connection is not warranted. See Rabideau v. Derwinski, 2 Vet. App. 141, 143 (1992); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). The July 2010 VA examiner specifically stated that there is no convincing evidence of a peripheral neuropathy of the lower extremities. Rather, the results of EMG (electromyogram) and NCV (Nerve conduction study) were remarkable for prolonged F waves and long duration high amplitude changes consistent with lumbar stenosis. 

The Board notes that while an October 2006 record states peripheral neuropathy in the feet was diagnosed in 2006, no objective findings accompany the statement. A medical opinion based on speculation, without supporting clinical data or other rationale, does not provide the required degree of medical certainty. Bloom v. West, 12 Vet. App. 185, 187 (1999). In addition, the April 2007 VA examination report reflecting a diagnosis of diabetes mellitus, type II, with "numbness feet" does not establish a diagnosis of peripheral neuropathy. 

The Board notes that a June 2005 VA record notes no focal weakness or numbness, and an October 2006 VA record reflects degenerative disc disease, cellulitis of the foot and osteoarthritis in multiple sites, disorders for which the Veteran is not service connected. In addition, on examination of the feet in July 2007, the examiner reported that pulses in the feet were palpable, with no feet ulcers or leg edema noted, and monofilament sensation was noted to be intact. Further, no leg edema was reported in January 2008. In addition, Social Security Administration (SSA) records reference arthritis of the spine, anxiety and schizophrenia, as well as service-connected diabetes mellitus, and an August 2010 VA record reflects tardive dyskinesia. The July 2010 VA examiner noted that given the Veteran's stiffness and complaints of fatigue, consideration should be given as to reevaluation of his medication, namely Risperdone. Regardless, the competent objective evidence does not establish a peripheral neuropathy of the lower extremities. 

In this case, the Board finds the objective evidence, to include clinical test results, along with the competent and probative 2010 VA opinion, does not establish that the Veteran has or has had a peripheral neuropathy of the lower extremities at any time during the relevant period. Rather, the greater weight of this evidence demonstrates that he does not currently have peripheral neuropathy of the lower extremities. Thus, service connection is not warranted under any theory of entitlement, to include on a presumptive basis as a result of exposure to Agent Orange during service in Vietnam, or secondary to service-connected disability, to include service-connected diabetes mellitus, type II. 

A determination as to whether the Veteran has current disability related to service or service-connected disability requires competent evidence. The Veteran is competent to report his symptoms to include numbness in the feet. As a layman, however, his opinion alone is not sufficient upon which to base a determination as to diagnosis and/or a relationship between service and current disability. Rather, the Board must weigh and assess the competence and credibility of all of the evidence of record. See Espiritu v. Derwinski, 2 Vet. App. 492, 494-95 (1992); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006); Washington v. Nicholson, 19 Vet. App. 362, 368-69 (2005); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Barr v. Nicholson, 21 Vet. App. 303 (2007). The Board notes that the Veteran in this case in not shown to have medical expertise. 

In Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. Sept. 14, 2009), the Federal Circuit stated that it had previously and explicitly rejected the view that competent medical evidence is required when the determinative issue in a claim for benefits involves either medical etiology or a medical diagnosis. Instead, under section 1154(a) lay evidence can be competent and sufficient to establish a diagnosis of a condition when: a layperson is competent to identify the medical condition; the layperson is reporting a contemporaneous medical diagnosis; or lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson reaffirms the holdings in Jandreau and Buchanan that VA must consider the competency of the lay evidence and cannot outright reject such evidence on the basis that such evidence can never establish a medical diagnosis or nexus. This does not mean, however, that lay evidence is necessarily always sufficient to identify a medical diagnosis, but rather only that it is sufficient in those cases where the lay person is competent and does not otherwise require specialized medical training and expertise to do so, i.e., the Board must determine whether the claimed disability is a type of disability for which a lay person is competent to provide etiology or nexus evidence. The Court has specifically indicated that lay evidence may establish the existence of a current disorder capable of lay observation, to specifically include varicose veins, tinnitus, and flat feet. See Barr v. Nicholson, 21 Vet. App. 303 (2007); Charles v. Principi, 16 Vet. App. 370, 374 (2002); and Falzone v. Brown, 8 Vet. App. 398, 405 (1995). 

In this case, the Board has accorded more probative value to the competent and probative July 2010 VA medical opinion to the effect that the Veteran does not have peripheral neuropathy of the lower extremities. The examiner reviewed the claims file, and provided a rationale for the opinion based on objective findings, reliable principles, and sound reasoning. 

The preponderance of the evidence is against the claim of entitlement to service connection for a peripheral neuropathy of the lower extremities, and there is no doubt to be resolved. Consequently, the benefits sought on appeal are denied.



ORDER

Service connection for peripheral neuropathy of the lower extremities is denied. 


REMAND

The Veteran asserts entitlement to a psychiatric disorder. Having reviewed the evidence, the Board finds further development is necessary. 

Initially, the Board notes that while the April 2011 supplemental statement of the case states that VA treatment records show no current treatment for paranoid schizophrenia, an August 2010 VA treatment record associated with the claims file following the Board's January 2010 remand, shows a diagnosis of chronic schizophrenia with medications noted to include Risperdone. In addition, in Clemons v. Shinseki, 23 Vet. App. 1 (2009), the U.S. Court of Appeals for Veterans Claims (Court) held that a claim for service connection for one psychiatric disorder should be addressed as encompassing any other psychiatric disorder which may reasonably be encompassed by the claimant's description of the claim, reported symptoms, and other information of record. In this case, the Board finds the Veteran's claim for service connection for a psychiatric disorder includes a claim for service connection for PTSD and/or related symptoms. 

In that respect, in a September 2008 statement, a family member stated that the Veteran had posttraumatic stress disorder (PTSD) as a result of service, noting that upon his return, he awoke from nightmares screaming and had panic attacks. In addition, a February 2006 VA treatment record notes the Veteran's history of having problems upon returning from Vietnam, at which time he began hearing voices. In an August 2007 statement in support of the claim, the Veteran asserted that studies have shown that anxiety has been related to exposure to Agent Orange and that he has anxiety as a symptom of schizophrenia. 

In addition, testimony at hearing in September 2008 is as follows:

Veteran: I was in Vietnam for 27 months.

Representative: Twenty-seven months?

Veteran: Yes sir. I extended right up to my ETS date. 

Representative: And you told me that during that time, you we[r]e under mortar fire and rocket attacks?

Veteran: Yes sir, rocket attacks and mortar attacks.

Representative: And sniper attacks?

Veteran: When the rockets and mortar attacks let up, we would get a 50 caliber machine gun in the back of the jeep and drive out to the perimeter of the compound that I was on, and get in to our sand bag bunkers. It was usually one to five o'clock in the morning when we got hit. And we were supposed to fire on anything that came along that road. And you couldn't tell what it was. But we did get fired back upon. But as far as I know, nobody was ever hurt. 

Representative: Okay. Now, the[r]e was a fellow soldier that was hit by a helicopter blade?

Veteran: Yes sir. [A] good friend of mine, and I can't recall his name right now. He worked on the over night crew on a Chinook helicopter that we had. He worked as a mechanic. And I was the unit supply sergeant, one of the supply sergeants in the supply room. And he used to come in every day and talk to me for 10 to 15 minutes just to pass time. And one night, he was working on a helicopter. And I guess that he forgot that the blade was turning, and he raised up, and the blade hit him in the head and knocked his safety helmet off and knocked him 20 feet, killing him instantly. And I heard about it the next morning, and I wanted to go view the body and bi[d] him farewell, so to speak. They had a media hospital right there on the post. And there was a sergeant in charge of our supply room who outranked me and wouldn't give me permission to go. So, I didn't go. And later on, he told me, you can go now. You can go see him now. And I said, yes, you tell me that after they have already flown him out. And he just had a smile on his face. And I called him a SOB even though he outranked me. And he jumped up and went to the first sergeant's office orderly room. And they called me down there and told me, you need to watch what you say around him because you know more about that supply room than he does. And he would like to see you out of there. So I didn't get a chance to bid my friend goodbye or anything. And they just [f]lew him off, and that was it. 

Representative: Now, what base was this on? Where were you located?

Veteran: [V]ung Tau. It was on the end of the peninsula out in the South China Sea, 50 miles from [Saigon]. 

Representative: Do you know about what month and year this might have happened?

Veteran: I went over the[r]e in January of 1967, and I would say that it was at least a year later. 

Representative: Okay. So, somewhere in 1968 probably?

Veteran: Yes. It was in 1968 or the first part of 1969 because I came back in May of 1969. 

Transcript at 4-5 (2008). 

The AOJ has not attempted to verify the claimed in-service stressors, and the Veteran's 201 personnel file is not associated with the claims file. 

In addition, the Board notes that while the December 2006 rating decision reflects the AOJ's determination that the Veteran did not engage in combat with the enemy via notation of combat code "1", his DD Form 214 shows that he served in Vietnam, that his last duty assignment was "24th CMB AVIATION BN", and that his decorations and awards include a Vietnam Campaign Medal. Section 1154(b) aids a combat veteran by relaxing the adjudicative evidentiary requirements for determining what happened in service. Regardless, for purposes of verification of an in-service event, the United States Court of Appeals for Veterans Claims (Court) has held that a veteran only needs to offer independent evidence of an event that is sufficient to imply his or her personal exposure. Suozzi v. Brown, 10 Vet. App. 307 (1997); see also Pentecost v. Principi, 16 Vet. App. 124 (2002).

The Board notes that service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a) (2009); a link, established by medical evidence, between current symptoms and an in-service stressor; and, credible supporting evidence that the claimed in-service stressor occurred. 38 U.S.C.A. § 1154 (West 2002); 38 C.F.R. § 3.304(f) (2010).
The Board further notes that, effective July 12, 2010, VA has amended its adjudication regulations governing service connection for PTSD by liberalizing, in certain circumstances, the evidentiary standard for establishing the required in-service stressor. Specifically, the final rule amends 38 C.F.R. § 3.304(f) by redesignating current paragraphs (f)(3) and (f)(4) as paragraphs (f)(4) and (f)(5), respectively, and by adding a new paragraph (f)(3) to the effect that if the claimed stressor is associated with the veteran's fear of hostile military or terrorist activity and a VA psychiatrist or psychologist confirms that the claimed stressor is adequate to support a diagnosis of PTSD related to the claimed stressor, in the absence of clear and convincing evidence to the contrary, and provided the claimed stressor is consistent with the places, types, and circumstances of the veteran's service, the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. 

Accordingly, the case is REMANDED for the following action:

1. Associate the Veteran's 201 personnel file with the claims file. 

2. After completion of the above to the extent possible, schedule the Veteran for a VA examination with a psychiatrist to determine the nature and etiology of identified psychiatric disorders, to include schizophrenia. The claims file must be available in for review in conjunction with the examination and the examiner's attention should be directed to this remand. All necessary tests should be accomplished. The AOJ should request that the examiner express an opinion as to whether psychosis had an onset during service or within the initial year after separation and/or an opinion expressed in terms of whether it is "more likely than not" (meaning likelihood greater than 50%), "at least as likely as not" (meaning likelihood of at least 50%), or "less likely than not" or "unlikely" (meaning that there is a less than 50% likelihood) that any psychiatric symptoms/disorders identified at any time during the appeal period are attributable to in-service disease or injury, to include exposure to Agent Orange, or otherwise related to service.

The term "at least as likely as not" does not mean "within the realm of medical possibility." Rather, it means that the weight of medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of that conclusion as it is to find against it. The examiner should provide a complete rationale for any opinion provided. 

3. In light of the above, the claim should be readjudicated. The AOJ should ensure all directives in this remand have been accomplished, to the extent possible, to include review of any medical opinion obtained for completeness and to make certain that a response to all questions posed has been provided, and if not, further development should be undertaken in that regard. If the benefits sought on appeal remain denied, a supplemental statement of the case should be issued and the Veteran afforded a reasonable opportunity in which to respond thereto.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2009).



____________________________________________
MILO H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs