Citation Nr: 1736730 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 15-21 049 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Seattle, Washington


THE ISSUES

1. Entitlement to service connection for posttraumatic stress disorder (PTSD).

2. Entitlement to service connection for an acquired psychiatric disorder other than PTSD.

3. Entitlement to service connection for ischemic heart disease (IHD), claimed as secondary to PTSD.


REPRESENTATION

Veteran represented by: Mary Anne Royle , Attorney at Law


ATTORNEY FOR THE BOARD

Steve Ginski, Associate Counsel


INTRODUCTION

The Veteran served on active duty from December 1954 to August 1958, with service in Korea from August 1955 to August 1956. 

These matters are before the Board of Veterans' Appeals (Board) on appeal from an August 2013 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Seattle, Washington. 

This appeal was initially before the Board in December 2015, when it was remanded for development. The appeal has been returned to the Board for appellate consideration. 

This appeal was processed using the Virtual VA paperless claims processing system and the Veterans' Benefits Management System (VBMS). Virtual VA contains documents that are either duplicative of the evidence in the VBMS electronic claims file or not relevant to the issue on appeal

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of entitlement to service connection for an acquired psychiatric disorder other than PTSD and for ischemic heart disease are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if additional action is required on his part.


FINDING OF FACT

There is no credible, verified or verifiable in-service stressor on which a diagnosis of PTSD can be based.


CONCLUSION OF LAW

The criteria for entitlement to service connection for PTSD have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA's duty to notify was satisfied by a January 2013 letter. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

In addition, the duty to assist the Veteran has also been satisfied in this case. The Veteran's service treatment records, as well as all identified and available post-service medical records are associated with the claims file. The Veteran has not identified any additional available, outstanding records pertinent to his claimed PTSD. 

The Veteran was afforded VA examination in July 2013. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the VA examination is adequate to decide the case. The medical opinions are predicated on a full reading of the available service treatment records contained in the Veteran's claims file, consider all of the pertinent evidence of record, and are supported with a complete rationale. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion relative to the issue on appeal has been met. 38 C.F.R. § 3.159(c)(4).

Finally, the Board finds compliance with the prior remand. A United States Court of Appeals for Veterans Claims or Board remand confers upon the appellant the right to compliance with that order. Stegall v. West, 11 Vet. App. 268, 271 (1998). Substantial compliance, rather than strict compliance, is required. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008). In the context of an examination, there is no Stegall violation when an examiner makes the ultimate determination required by the Board's remand, because such determination constitutes substantial compliance. Dyment v. West, 13 Vet. App. 141, 146-47 (1999). Here, the prior remand directed the RO to undertake additional development in order to verify the Veteran's claimed stressors for his claim of entitlement to service connection for PTSD. In November 2016, the Veteran waived any further development and requested that the claim be expedited back to the Board for adjudication. Thus, there has been compliance with the prior remand.

For these reasons, the Board concludes that VA has fulfilled the duty to assist the Veteran in this case. Hence, there is no error or issue that precludes the Board from addressing the merits of this appeal.

II. Service Connection

Generally, service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303(a)(2016). To establish service connection, the following must be shown: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may also be granted for any disease initially diagnosed after service, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2016). 

Service connection for PTSD similarly requires (1) medical evidence establishing a diagnosis of the disorder, (2) credible supporting evidence that the claimed in-service stressor occurred, and (3) a link established by medical evidence between current symptoms and an in-service stressor. 38 C.F.R. § 3.304(f). The PTSD diagnosis must be made in accordance with the criteria of Diagnostic and Statistical Manual of Mental Disorders. 

The evidence necessary to establish the occurrence of a stressor during service to support a diagnosis of PTSD will vary depending upon the circumstances of the case. VA has provided for specific types of cases where lay evidence alone may be sufficient to describe the stressor and further corroborating evidence will not be required. Corroborating evidence is not required in cases where (1) PTSD is diagnosed in service; (2) the evidence establishes the veteran engaged in combat with the enemy and the claimed stressor is related to that combat; (3) the stressor is related to the veteran's fear of hostile military or terrorist activity; and (4) the evidence establishes that the veteran was a prisoner-of-war and the stressor is related to that prisoner-of-war experience. 38 C.F.R. § 3.304(f)(1), (f)(2), (f)(3), (f)(4). In any of the above situations, the veteran's lay testimony or statement is accepted as conclusive evidence of the stressor's occurrence; and no further development or corroborative evidence is required providing that such testimony is found to be consistent with the circumstances, conditions, or hardships of service and there is no clear and convincing evidence to the contrary. 38 U.S.C.A. § 1154(a), (b); 38 C.F.R. § 3.304(f)(1), (f)(2), (f)(4).

Regarding combat stressors, the evidence necessary to establish the occurrence of a recognizable stressor during service will vary depending on whether the veteran engaged in combat with the enemy. Hayes v. Brown, 5 Vet. App. 60 (1993). If the evidence establishes that the veteran engaged in combat with the enemy and the claimed stressor is related to that combat, in the absence of clear and convincing evidence to the contrary, and provided that the claimed stressor is consistent with the circumstances, conditions, or hardships of the veteran's service, the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. 38 C.F.R. § 3.304(f). There need not be "corroboration of every detail including the appellant's personal participation in the identifying process." Suozzi v. Brown, 10 Vet. App. 307, 311 (1997).

Regarding stressors based on a veteran's fear of hostile military or terrorist activity, lay evidence alone may establish an alleged stressor where: 1) the stressor is related to the veteran's fear of hostile military or terrorist activity; 2) a VA medical practitioner confirms that the claimed stressor is adequate to support a diagnosis of PTSD and that the veteran's symptoms are related to the claimed stressor; 3) the stressor is consistent with the places, types, and circumstances of the veteran's service; and 4) there is no clear and convincing evidence to the contrary. 38 C.F.R. § 3.304(f)(3).

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the veteran. Equal weight is not accorded to each piece of evidence of the record. When there is an approximate balance of evidence for and against the issue, reasonable doubt will be resolved in the veteran's favor. 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 3.102 (2016); Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

In this case the Veteran is claiming entitlement to service connection for PTSD, which he asserts is related to claimed stressors that occurred during his military service in Korea. His claim has been denied by the AOJ based on a finding that there is no credible corroborating evidence of a stressor event in service. His attorney challenges that finding citing to 38 C.F.R. § 3.304(f)(3) for the proposition that corroboration of the fear of hostile military action stressor is not necessary, and may be established by the Veteran's lay testimony alone. 

The Veteran's service in Korea was from August 1955 to August 1956. This service was not during a period of war (see 38 C.F.R. § 3.2(e)), as the Korean Conflict Era ended January 31, 1955. However, the RO conceded in the April 2015 Statement of the Case that its research showed that isolated events of brief hostile encounters occurred in Korea for many years thereafter. The Veteran has submitted a stressor account indicating that he was involved in a number of hostile activity-type incidents from August 1955 to July 1956 (previously the Veteran had identified his Korean service as occurring between June 1955 to November 1956, later amending his claim to reflect the correct dates) while serving with the 605th Tactical Control Squadron. He elaborates on one such incident in September 1955, indicating that the squadron was composed of 20 airmen, 20 U.S. Army soldiers, and 20 Marines, and that they came under attack by North Koreans (among them two Koreans who worked with their unit -and whom he "knew quite well") and killed 14 or 15 of the attackers, including the two Koreans he knew, while taking no casualties themselves. See e.g., December 2016 notarized affidavit. 

In the December 2016 affidavit, the Veteran also described how his squadron was responsible for delivering armaments from various bases to Inchon and providing a safety net and security for radar sites that would come under attack, especially at night. His squadron also was responsible for providing supplies, food, materials, and weapons needed for the radar sites. Bases that his squadron supported included Choran, Tanyang, Pyonotek, Suwon, Osan, Inchon, Kosong, Kangnum, Seoul, and Youchon. He described his squadron being involved in a number of firefights and skirmishes, particularly in areas further north that were closer to the DMZ like Kosong, Youchon, and Kangnuag. 

In an August 2013 statement, the Veteran indicated that his claimed stressor occurred when his company was linked with a supporting Army unit. He reported that he feared for his life when an ambush injured an Army soldier and he saw that two South Korean civilians that were befriended by his unit were killed. Reportedly, his unit command cautioned witnessing servicemen to act as if the altercation had never happened. 

Aside from his claimed stressor that specifically describes an event wherein his unit was attacked, the Veteran has also claimed he has PTSD as a result of fear of hostile military or terrorist activity, a more general stressor. For instance, in the December 2016 affidavit, the Veteran reported that he was constantly fearful of being shot or coming under attack. During his service in Korea, there were several North Koreans and some Chinese that would cross the DMZ. It was not uncommon to encounter these groups, averred the Veteran. 

The AOJ attempted verification of the Veteran's stressor. However, because the stressor information did not include many details capable of verification, the search was limited to the history of the Veteran's unit. The response received from the Air Force Historical Research Agency indicated that they did not have unit histories for the 605th Tactical Control Squadron, and while they did have unit histories for the parent organization (the 502nd Tactical Control Group) those did not include the history for the period of July through December 1955. Pursuant to the Board's December 2015 remand, the RO again attempted to verify the Veteran's claimed stressor. However, in a November 2016 letter from the Veteran's attorney, the Veteran waived further development to verify his stressor because the stressor was related to fear of hostile military or terrorist activity, and not based on the Veteran's involvement in combat. As a result, the RO did not undertake actions to develop the unit histories of those units identified by the Veteran during the appeal, to develop for any listings of enemy casualties in U.S. and U.N. armed forces serving in Korea in September 1955, or to develop unit summaries of the 502nd Tactical Control Group for September 1955. The Board further notes that the Veteran's DD 214 shows that he received a Good Conduct Medal. No other decorations, medals, badges, commendations, citations, and campaign ribbons were documented as being awarded to the Veteran as a result of his service. The DD 214 certainly provides no indication that the Veteran participated in combat. 

Based on the Veteran's waiver and the state of the evidence extant at the time of the waiver, the Board is unable to concede that the Veteran engaged in combat with the enemy during his military service in Korea. Thus, for the purposes of service connection for PTSD, an in-service combat stressor is ruled out. 

Thus, the only remaining claimed stressor is the Veteran's fear of hostile military or terrorist activity during his service in Korea. In this regard, the Veteran has essentially described that he experienced fear of being engaged by the enemy while he was in transit to numerous locations in Korea pursuant to his military occupation. The Veteran's service personnel records show that he was a supply specialist in the Air Force and that during the month of September 1955 he was receiving training (including on manuals specific to such occupation) which culminated with his advancement in grade, and that there is no acknowledgement of his participation in the type of firefight he describes. In December 2015, the Board noted that action resulting in 14 or 15 enemy killed with no casualties reasonably would have resulted in some recognition or commendation, corroborated by the Veteran's DD 214. Similarly, if the Veteran was in regular close proximity to the DMZ, such service would have presumably been documented. In addition, a March 1956 letter of commendation on behalf of the Veteran from a unit supply officer noted that the Veteran had performed such duties as a bench stock clerk, airman in charge of the section, and helper in a quartermaster section, in the course of commending the Veteran's service in the 605th Tactical Control Squadron Unit Supply since August 1955. In no way do the service personnel records support the Veteran's contention that he was placed in situations that would reasonably result in fear of hostile military or terrorist activity. In short, the Veteran's reports are inconsistent with the known circumstances of his service. 

Therefore, the Board finds that the Veteran's assertion that he experienced fear of hostile military or terrorist activity is inconsistent with the places, types, and circumstances of his service. The objective evidence of record simply does not support the Veteran's assertions that there was regular hostile activity that impacted his regular duties. Development taken thus far has not yielded any information that would have supported a finding that the Veteran was located in an area wherein hostile forces would have posed a threat to the Veteran. The only evidence upon which the Board may rely are the Veteran's statements and the conceded fact that there were isolated events of brief hostile encounters that occurred in Korea for many years after the Korean conflict era ended on January 31, 1955. 

In addition, the Board finds that the Veteran's recollection of his service pertaining to his claimed stressors to be not credible. VA provided an examination for the Veteran's claim in July 2013. The examiner opined that the Veteran most likely had moderate PTSD caused by his fear of hostile military or terrorist activity during his military service. During the clinical interview, the Veteran reported having combat exposure in Korea, being in multiple firefights and seeing enemy soldiers he had shot and killed. Such an account of combat is wholly inconsistent with his in-service occupation and his statements regarding being in an ambush prior to his examination. Thus, the Board is unable to accept the July 2013 VA examination as a confirmation that the claimed stressor is adequate to support a diagnosis of PTSD. Further, the stressor is not verified, and the diagnosis of PTSD at the July 2013 VA examination is invalid because it is based on an inaccurate factual background.

In summary, the Veteran has reported in-service stressful events that he believes entitle him to service connection for PTSD. The Veteran is not credible in his account of his exposure to combat, and his allegation that he was in combat is unverified and inconsistent with his service personnel records. Further, his allegations concerning his claimed fear of hostile military or terrorist activity are not consistent with the places, types, and circumstances of his service. The Veteran's service in Korea fell outside of a period of war. 38 C.F.R. § 3.2 (2016). In addition, acknowledging that isolated events of brief hostile encounters occurred in Korea for many years thereafter, there is no indication that the Veteran's service placed him near any such incidents. Finally, the RO took appropriate actions to verify the Veteran's reported stressors, but was unable to do so due to a lack of sufficient information. Subsequent attempts to verify his claimed stressors were stopped because the Veteran directly waived his right to further development to verify his stressor because his stressor was allegedly related to his fear of hostile military or terrorist activity. 

In short, neither stressful event has been corroborated under the general provisions of 38 C.F.R. § 3.304(f) or under the liberalizing provisions of 38 C.F.R. § 3.304(f)(3). As such, the Board concludes that there is no verified in-service stressor, and the preponderance of the evidence is against the claim for entitlement to service connection for PTSD. Because the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not for application, and the claim must be denied. 38 U.S.C.A. § 5107(b); see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Service connection for PTSD is denied. 



REMAND

Regrettably, remand is required for the Veteran's claim of entitlement to service connection for an acquired psychiatric disorder other than PTSD. Of record are diagnoses of anxiety and depression. To date, there has not been an examination that addresses whether the Veteran has a non-PTSD psychiatric disorder that is related to service. In addition, the record reasonably raises the question of whether an acquired psychiatric disorder other than PTSD had its onset in or shortly after the Veteran's active service. An examination and opinion are necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but (1) contains competent evidence of diagnosed disability or symptoms of disability, (2) establishes that the veteran suffered an event, injury or disease in service, or has a presumptive disease during the pertinent presumptive period, and (3) indicates that the claimed disability may be associated with the in-service event, injury, or disease, or with another service-connected disability. 38 C.F.R. § 3.159(c)(4); McLendon v. Nicholson, 20 Vet. App. 79, 83-86 (2006) (noting that the third element establishes a low threshold and requires only that the evidence "indicates" that there "may" be a nexus between the current disability or symptoms and active service, including equivocal or non-specific medical evidence or credible lay evidence of continuity of symptomatology). Here, the Veteran has indicated that he had psychiatric symptoms shortly after his service. In a buddy statement received in March 2015, the Veteran's wife indicated that the Veteran had been having anxiety attacks and PTSD flashbacks as a result of his service in Korea. As there is competent evidence of a diagnosed psychiatric disability and evidence to suggest that the condition has been chronic, the Board finds that the evidence of record meets the low threshold set by the McLendon test, and that an examination should be provided to ascertain the etiology of any non-PTSD psychiatric disorder. 

In addition, the Veteran seeks service connection for ischemic heart disease on the basis that it is secondary to a psychiatric disorder. He has submitted a statement from his psychiatric counselor that indicates the Veteran's cardiologist linked his heart disease to a psychiatric disorder. Therefore, the claim of service connection for IHD is inextricably intertwined with the claim pertaining to a psychiatric disorder and cannot be properly addressed prior to resolution of the psychiatric disorder claim.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Contact the appropriate VA Medical Center and obtain and associate with the claims file all outstanding records of treatment. If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his representative. 

2. After the preceding development is completed, provide the Veteran with an appropriate examination to determine the etiology of any diagnosed non-PTSD psychiatric disorders. The entire claims file must be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. 

The examiner must provide a diagnosis of all current psychiatric disorders, excluding PTSD. If depression or anxiety is not diagnosed, an explanation must be provided, to include discussion of the prior diagnoses of record in the VA treatment records. 

For each diagnosed psychiatric disorder other than PTSD, the examiner must provide an opinion regarding whether it is at least as likely as not (50 percent or greater probability) that each disorder was caused or aggravated by military service.

3. Notify the Veteran that it is his responsibility to report for any scheduled examination and to cooperate in the development of the claim, and that the consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §§ 3.158, 3.655 (2016). In the event that the Veteran does not report for any scheduled examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

4. Ensure compliance with the directives of this remand. If a report is deficient in any manner, implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998). 

5. After completing the above action, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, the claims must be readjudicated. If the claims remain denied, a supplemental statement of the case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



____________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs