Carleton J. WEST, Jr., Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–890.

United States Court of Veterans Appeals.

Aug. 8, 1994.

As Amended Aug. 19, 1994.

Ronald L. Smith, Bowie, MD, was on the brief for appellant.

Robert E. Coy, Acting Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Adam K. Llewellyn, Washington, DC, were on the pleadings for the Secretary.

Before FARLEY, HOLDAWAY, and IVERS, Judges.

IVERS, Judge:

Carleton J. West, Jr., appeals a June 4, 1992, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for post-traumatic stress disorder (PTSD). *Carleton J. West, Jr.*, BVA 92–13812 (June 4, 1992). (The BVA decision also granted an effective date prior to June 2, 1988, for service connection for degenerative disc disease of the lumbar spine. The appellant, however, has not appealed this issue.) We have jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). The Secretary has filed a motion for summary affirmance. For the reasons set forth below, we vacate the June 1992 decision of the BVA and remand the case for readjudication consistent with this opinion.

## I. FACTUAL BACKGROUND

The appellant served on active duty in the United States Marine Corps from October

25, 1950, to October 11, 1951. R. at 19. He participated in combat between May 30, 1951, and June 17, 1951. R. at 123. A December 22, 1983, letter from a VA psychiatrist indicates that the appellant was diagnosed with dysthymic disorder and generalized anxiety. R. at 44; *see also* R. at 47–48.

Apparently, the appellant filed a claim for service connection for an unspecified nervous disorder in February 1984. *See* R. at 62, 70. A July 1985 VA psychiatric examination report provided a diagnosis of "[m]ajor depression with generalized anxiety and several symptoms of post traumatic stress disorder, delayed type." R. at 51. Regarding the PTSD symptoms, the psychiatrist opined:

> These symptoms may have been masked in his early years following Korea by his heavy drinking, but he does not recall them being apparent during the 20 years when he drank very little and does not understand why they have begun to occur since he has been depressed. He denies ever having had any mental symptoms while in the service, and his military medical record does not indicate any mental symptoms.

R. at 52. The record on appeal does not indicate the disposition, if any, of the claim, but it appears that the claim was denied because the appellant's November 1989 PTSD claim was later characterized as a "reopened" claim. R. at 62.

On November 10, 1989, the appellant wrote to a VA regional office (RO) and indicated that he wished to seek compensation for PTSD. R. at 53. On January 23, 1990, the appellant underwent a VA compensation and pension examination. *See* R. at 55. In the resulting examination report, a VA psychiatrist and a VA psychologist wrote:

> The veteran served in the United States Marine Corps during the period of the Korean War on the U.S.S. [Bon Homme] Richard CV–31, an aircraft carrier. He states that in his duty on the aircraft carrier, which was active in attacks on North Korea, he saw many men killed because of crashes and loose ordinance [sic] including bombs that fell from landing aircraft at times. He indicates that the Marines were used primarily when the carrier landings

were made to pick up debris and they were responsible for picking up any loose bombs that fell from the aircraft. Some of these weighed 500 pounds and others 250 pounds. He hurt his back lifting an active bomb along with another man to throw it over the side. As a result of this his service connected injury was apparently amply documented and he was discharged medically in 1951. The veteran, following service, indicates that he had dreams of planes crashing and the bombs on the deck and people being burned in the aircraft. . . .

*Ibid.* The report continued: "I find that [the appellant] was exposed to significant traumatic events, that he reexperiences these events by dreams and intrusive thoughts." R. at 57. Regarding the stressors, the report concluded: "Initial stressor level 5 or 6, extreme to catastrophic—moving armed bombs, being exposed to aircraft crashes on an aircraft carrier during a period of war, enduring circumstances, significant chronic physical illness, loss of status, and a successful lifestyle." *Ibid.*

On February 14, 1990, in denying service connection for PTSD, the RO rating decision indicated that the "history of stressors [is] inadequate to support the diagnosis because they do not show verifiable incidents of the nature required by current law." R. at 64. The RO sent the appellant notification of its denial on March 6, 1990. R. at 65. In that letter, the RO wrote: "The evidence does not show that you suffered a combat wound, received a Purple Heart, [n]or is there any evidence of an award for valor." *Ibid.* A May 8, 1990, Statement of the Case, however, stated:

> Objective evidence indicative of stressors, such as an award of the Purple Heart Medal for combat wounds, an award for valor in combat or other similar citation is lacking. To conclude, on the other hand, as you do that "only those who suffered a combat wound or received an award of valor" are entitled to service connection for [PTSD] is incorrect. Other evidence of distressful incidents, and again, we mean incidents productive of distress in almost everyone, could include, but are hardly

limited to verified duty assignment to a burn ward, duty in a graves registration unit, survival of sinking ship, confinement as a prisoner-of-war or the verified combat death of a close friend or relative which you witnessed and so on. It must be emphasized that the evidence must be objective and verifiable and such is not the present circumstance of your claim.

R. at 75.

On March 19, 1991, the Board remanded the PTSD claim for the appellant to "provide specific details of stressful events," for the RO to seek military records relating to any such incidents, including "corroborating information by the United States Army and Joint Services Environmental Support Group," and for the conduct of a psychiatric examination "by a board of two VA psychiatrists in order to clarify the diagnoses, and to determine whether the veteran has [PTSD] related to his military service." R. at 95.

On April 25, 1991, the appellant's service representative forwarded to the RO copies of deck logs and remark sheets from the U.S.S. *Bon Homme Richard* from March 28, 1951, through June 21, 1951. R. at 98, 102, 104–19.

In connection with the BVA's remand for further development, in a July 17, 1991, letter, a board of two VA psychiatrists wrote:

> Mr. West was examined on 07/16/91 for an evaluation of a possible [PTSD]....
>
> At the present time, Mr. West's complaints are unchanged from previous evaluation. He described his traumatic experiences of seeing people killed in plane crashes while serving on an aircraft carrier during the Korean War, lifting heavy, activated bombs to throw them over the side of the ship, and the like. He continues to have dreams and intrusive images of these events, has chronic insomnia, has been isolated and estranged from other people. Mr. West appears unchanged from his previous psychiatric evaluations, and we concur with their diagnosis of [PTSD] related to his military service.

R. at 133. A rating decision on remand continued denial of service connection for PTSD. R. at 137.

On October 23, 1991, the appellant testified at a personal hearing before the RO that he had volunteered to remove active bombs which would drop from planes landing on the aircraft carrier where he had been assigned. R. at 154. He also testified about being present during several airplane crashes on board the carrier, including one incident where he "was standing between the two 5[-]inch gun mounts when a plane hit it, sheared its wing off, burst into flame, flaming debris all over the deck and all over me." *Ibid.* In addition, he stated that, while standing on the aircraft carrier, he observed an airplane attack on a railroad trestle near the Korean shore, during which he witnessed the deaths of enemy soldiers. R. at 174–75. On November 4, 1991, the RO hearing officer continued the denial of service connection for PTSD. R. at 178–79. On June 4, 1992, the Board issued a decision denying service connection for PTSD. *West,* BVA 92–13812, at 10. One of the three Board members dissented from the majority's decision to deny service connection for PTSD. *Id.,* BVA 92–13812, at 11–13 (Rice, Board member, dissenting).

## II. ANALYSIS

### A. *Nature of Claim*

■ It is unclear whether the appellant's claim for service connection for PTSD is an original claim or a resubmitted claim. It appears that there may have been an adjudication after February 1984. *See* R. at 62, 70. If the claim now on appeal is a resubmitted claim, it is subject to 38 U.S.C. § 5108, which requires the Secretary to reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. On claims to reopen previously and finally disallowed claims, the BVA must conduct a two-part analysis. *See Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material." *See Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). "New evidence" is evidence that is not "merely cumulative" of other evidence on the record. *Ibid.* Evidence is "material" where

it is "relevant to and probative of the issue at hand" and where it is of "sufficient weight or significance that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Sklar v. Brown*, 5 Vet.App. 140, 145 (1993); *Cox v. Brown*, 5 Vet.App. 95, 98 (1993); *Colvin*, 1 Vet.App. at 174. Second, if the BVA determines that the evidence is new and material, it must reopen the claim and "evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old." *Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992). Whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C. § 7261(a)(1). *See Masors*, 2 Vet.App. at 185. We hold that the recently submitted psychiatric evaluations are new and material.

■ Once a claim is reopened, the Court reviews the Board's factual findings under the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Stanton v. Brown*, 5 Vet.App. 563, 567 (1993); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Gilbert*, 1 Vet.App. at 53.

### B. *Evaluation of PTSD Claims*

■ Adjudication of a claim for service connection for PTSD requires evaluation of the supporting evidence in light of the places, types, and circumstances of service, as evidenced by service records, the official history of each organization in which the veteran served, the veteran's military records, and all pertinent medical and lay evidence. 38 U.S.C. § 1154(b); 38 C.F.R. §§ 3.303(a), 3.304 (1993); *see Hayes v. Brown*, 5 Vet.App. 60, 66 (1993). With respect to injuries or disabilities incurred in or aggravated during combat, including psychiatric disabilities, even in the absence of official records to corroborate that a claimed injury or disease was incurred in or aggravated during such combat, the Secretary is required to accept as sufficient proof of service connection satisfactory lay or other evidence, provided, however, that the evidence is consistent with the circumstances, conditions, or hardships of such service. 38 U.S.C. § 1154(b); 38 C.F.R. § 3.304(d); *see also Hayes, supra.* Service connection may be rebutted by clear and convincing evidence to the contrary. 38 U.S.C. § 1154(b).

On May 19, 1993, a new subsection (f) was added to 38 C.F.R. § 3.304 which deals with the adjudication of PTSD claims and which provides, in pertinent part, as follows:

> (f) *Post-traumatic stress disorder.* Service connection for post-traumatic stress disorder requires medical evidence establishing a clear diagnosis of the condition, credible supporting evidence that the claimed inservice stressor actually occurred, and a link, established by medical evidence, between current symptomatology and the claimed inservice stressor. If the claimed stressor is related to combat, service department evidence that the veteran engaged in combat or that the veteran was awarded the Purple Heart, Combat Infantryman Badge, or similar combat citation will be accepted, in the absence of evidence to the contrary, as conclusive evidence of the claimed inservice stressor.

38 C.F.R. § 3.304(f) (1993).

In addition, VA ADJUDICATION PROCEDURE MANUAL M21–1 [hereinafter MANUAL M21–1] contains specific procedures for the VA to follow in evaluating claims for service connection based on PTSD. Recent revisions to the Manual now provide in pertinent part:

> e. *Reasonably Supportive Evidence of Stressors in Service.* Any evidence available from the service department indicating that the veteran served in the area in which the stressful event is alleged to have occurred and any evidence supporting the description of the event are to be made part of the record. If the claimed stressor is related to combat, in the absence of information to the contrary, receipt of the Purple Heart, Combat Infantryman Badge, Bronze Star, or other similar citations is considered supportive evidence of participation in a stressful episode. Other supportive evidence includes, but is not limited

to, plane crash, ship sinking, explosion, rape or assault, duty on a burn ward or in graves registration unit. POW status is conclusive evidence of an inservice stressor.

f. *Development for PTSD.* If the evidence shows the veteran engaged in combat with the enemy and the claimed stressor is related to combat, no further development for evidence of a stressor is necessary. See subparagraph e above. If the claimed stressor is not combat related, a history of a stressor as related by the veteran is, in itself, insufficient. Service records must support the assertion that the veteran was subjected to a stressor of sufficient gravity to evoke the symptoms in almost anyone. The existence of a recognizable stressor or accumulation of stressors must be supported. It is important the stressor be described as to its nature, severity and date of occurrence.

MANUAL M21–1, Part VI, ¶ 7.46(e)–(f) (Dec. 21, 1992).

 Thus, under 38 U.S.C. § 1154(b), 38 C.F.R. § 3.304, and the applicable MANUAL M21–1 provisions, the evidence necessary to establish the occurrence of a recognizable stressor during service varies depending on whether or not the veteran was "engaged in combat with the enemy." *See Hayes,* 5 Vet.App. at 66. Where it is determined, through the receipt of certain recognized military citations or other supportive evidence, that the veteran was engaged in combat with the enemy and the claimed stressors are related to such combat, the veteran's lay testimony regarding claimed stressors must be accepted as conclusive as to their actual occurrence and no further development for corroborative evidence will be required, provided that the veteran's testimony is found to be "satisfactory," e.g., credible, and "consistent with the circumstances, conditions, or hardships of such service." 38 U.S.C. § 1154(b); 38 C.F.R. § 3.304(d), (f); MANUAL M21–1, Part VI, ¶ 7.46(e)–(f); *see Hayes,* 5 Vet.App. at 66. Clear and convincing evidence to the contrary may serve to rebut service connection. 38 U.S.C. § 1154(b). Where, however, the VA determines that the veteran did not engage in combat with the enemy, or that the

veteran did engage in combat with the enemy but the claimed stressor is not related to such combat, the veteran's lay testimony, by itself, will not be enough to establish the occurrence of the alleged stressor. Instead, the record must contain service records which corroborate the veteran's testimony as to the occurrence of the claimed stressor. 38 U.S.C. § 1154(b); 38 C.F.R. § 3.304(d), (f); MANUAL M21–1, Part VI, ¶ 7.46(e)–(f). Although the new MANUAL M21–1 provisions and 38 C.F.R. § 3.304(f) became effective after the appellant filed his appeal with this Court, the Court and the VA are required to apply these substantive changes to the appellant's claim to the extent that they are more liberal than the earlier provisions. *See Swann v. Brown,* 5 Vet.App. 229, 232 (1993); *see also Hayes,* 5 Vet.App. at 66–67; *see also Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991) (more favorable law or regulation applies where law or regulation changes before conclusion of administrative or judicial appeal process unless Congress has provided otherwise or permitted Secretary to do so).

 In *Zarycki v. Brown,* 6 Vet.App. 91, 98 (1993), the Court held that the "reasons or bases" requirement and the statutory and regulatory background of PTSD claims adjudications require the BVA to "make specific findings of fact as to whether or not the veteran was engaged in combat with the enemy and, if so, whether the claimed stressor is related to such combat." Further, the BVA must provide adequate reasons or bases for its finding, including a clear analysis of the evidence which it finds persuasive or unpersuasive with respect to that issue. *See Gilbert,* 1 Vet.App. at 57.

### C. Development of the Appellant's Combat– and Non–Combat– Related Stressors

In its June 1992 decision, the Board stated: "The veteran did not receive any awards or decorations which would indicate that he participated in direct combat, but rather, his service records indicate that he served aboard a vessel that participated briefly in combat operations." *West,* BVA 9213812, at 6. With respect to some events, most notably the crash of an airplane between two gun

mounts in the appellant's presence, the appellant does not argue that he was then engaged in combat. Br. at 9. The appellant, however, does indicate that one of the other alleged stressors, the removal of live ordnance from landing aircraft, was during combat operations, when military record entries would not have been very detailed. *Id.* at 10.

As the Court explained in *Zarycki,* 6 Vet.App. at 100,

[i]f the BVA determines that appellant was engaged in combat with the enemy and that appellant's alleged stressors are related to such combat, appellant's lay testimony, without further evidentiary development, will be enough to establish the occurrence of the claimed in-service stressors provided that such lay testimony is satisfactory, e.g., credible, and consistent with the circumstances, conditions, or hardships of such service.

In this case, the Board rejected out-of-hand the possibility that any of the alleged stressors were combat-related on the ground that the appellant's vessel was engaged in combat for only a brief period of time. The BVA erred by failing to determine which events, if any, occurred during combat, and we will remand the case for such development. On remand, the BVA must determine the extent of the appellant's combat service and which, if any, of the alleged stressors took place during such service.

With respect to the presumably non-combat-related stressors, in its June 1992 decision, the BVA stated that the appellant's account of his wartime experiences includes several inconsistencies. Specifically, the appellant's account of having witnessed airplane crashes resulting in deaths was inconsistent with the deck logs submitted by the appellant that reported several crashes but no deaths. *West,* BVA 92–13812, at 6. Thus, the Board articulated reasons or bases regarding the credibility of the appellant's account of these incidents.

Unlike the BVA decision reviewed by the Court in *Wilson v. Derwinski,* 2 Vet.App. 614 (1992), however, the June 1992 BVA decision in the instant appeal is not entirely "a model of how facts should be evaluated and weighed." *Id.* at 618. The Board rejected the appellant's account that he was almost hit by a crashing airplane on March 23, 1951, on the grounds that the appellant did not receive any burn injuries and that the deck logs do not record any personnel injuries. *West,* BVA 92–13812, at 7. The appellant, however, did not indicate that he was burned by any flaming debris from the airplane crash or that any military personnel were injured or killed as a result of this crash. R. at 154–55. In addition, the BVA rejected the appellant's account of having removed live ordnance from the carrier deck on the ground that deck logs did not report any such incidents. *West,* BVA 92–13812, at 7. The Board's reasoning, however, is deficient. Where the appellant removed live ordnance in the manner described during combat, corroboration by official records is not required, provided that such lay testimony is satisfactory. *See* 38 C.F.R. § 3.304(f). As discussed above, the Board did not entirely discuss whether any of the claimed stressors occurred in combat.

The Board also conspicuously did not discuss the appellant's account of having witnessed the deaths of enemy soldiers trapped on a railroad trestle by aircraft flying from the U.S.S. *Bon Homme Richard. See* R. at 174–75.

### D. *Inadequacy of Psychiatric Examinations*

As the Secretary argues in his brief, the BVA is not required to accept a physician's diagnosis "[j]ust because a physician or other health professional accepted the appellant's description of his [wartime] experiences as credible and diagnosed the appellant as suffering from PTSD." *Wilson,* 2 Vet.App. at 618. The VA's psychiatric evaluations relied upon the appellant's account of his experiences while serving aboard the U.S.S. *Bon Homme Richard* during the Korean War. Although the Board is free to reject a claimant's account that certain events occurred, provided that it gives reasons or bases for its decision, in this case, the Board's determination that certain events did not occur, coupled with its determination that certain other events also did not occur, only underscores that the bases underlying the VA's psychiat-

ric evaluations may have been inadequate. Those evaluations are based, in part, on certain events that the Board rejected. Therefore, the psychiatric examinations were inadequate for rating purposes.

■■■ Once a claimant has submitted "evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded," the Board has a duty to assist him in developing the facts pertinent to his claim. 38 U.S.C. § 5107(a); *see* 38 C.F.R. § 3.103(a) (1993); *Waddell v. Brown,* 5 Vet.App. 454, 456 (1993); *Green v. Derwinski,* 1 Vet.App. 121, 124 (1991); *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990); *see also* 38 C.F.R. § 4.2 (1993) (rating specialist must interpret examination reports in light of whole record, "reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present"; if a diagnosis is not supported by findings on an examination report or if a report does not contain sufficient detail, "it is incumbent upon the rating board to return the report as inadequate for evaluation purposes."); *Abernathy v. Principi,* 3 Vet.App. 461, 464 (1992) (BVA decision was erroneous where, inter alia, it relied on incomplete examination). In light of the examiner's reliance upon a questionable history, the record is inadequate and thus frustrates effective judicial review. *See Ardison v. Brown,* 6 Vet.App. 405, 407 (1994). The Board's reliance on an examination which, in turn, relied on a questionable history of events was error, and we will remand the case to the BVA for compliance with the duty to assist and the conduct of an examination. On remand, the Board should obtain a psychiatric evaluation that is based on a complete and accurate description of events during the appellant's service.

### E. *Sufficiency of Stressors*

We note the appellant's argument that the Board erroneously rejected the sufficiency of the stressors. In the Board's June 1992 decision, one of the Board members dissented, stating that two of the stressors related by the appellant—the disposal of live ordnance and the appellant's presence in the midst of an airplane crash on March 23,

1951—were adequate stressors supporting a diagnosis of PTSD. *West,* BVA 92–13812, at 11–12. The appellant argues that the determination of whether a stressor is sufficient to support a diagnosis of PTSD is a medical determination and that the Board may not substitute its own unsubstantiated medical conclusion to refute such an expert medical conclusion. Br. at 12–13; *see Colvin,* 1 Vet. App. at 174. In this particular case, contrary to the appellant's characterization (as well as the characterization by the dissenting member of the Board panel deciding the case), the Board questioned the *existence,* not the *sufficiency,* of the stressors.

■■ Nevertheless, the appellant raises an interesting issue regarding the evaluation of the sufficiency of a claimed stressor. The statutory and regulatory schemes for evaluating PTSD claims do not specify whether the sufficiency of a stressor is purely a medical question subject to the Court's requirement of independent medical evidence as discussed in *Colvin* and its progeny or purely a factual question within the purview of the Board.

Furthermore, the Court has not specified whether the sufficiency of a stressor is purely medical or factual in nature. In *Swann,* 5 Vet.App. at 233, the Court held that the appellant's descriptions of his experiences while in service "are not beyond the ordinary, i.e., they would not, in and of themselves, *evoke symptoms in* 'almost everyone.'" In the instant appeal, as the Board stated, the appellant's experiences were not beyond the ordinary.

In *Zarycki,* the Court discussed the elements of diagnosis of PTSD:

> According to [the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS–III–R (3d ed. 1987) (hereinafter DSM–III–R)], the "essential feature" of PTSD is "a psychologically distressing event that is outside the range of usual human experience." DSM–III–R, at 247. The DSM–III–R notes in this context that the "most common traumata" include a threat to one's life, a threat to the lives of one's friends, or seeing another person who has recently been seriously injured or killed as the re-

sult of an accident or physical violence. *Id.* The DSM–III–R specifically lists "military combat" as a type of traumatic event which often gives rise to PTSD. *Id.* at 248. VA's MANUAL M21–i, applying the guidelines set forth in DSM–III–R, states as follows:

> **Essentials of diagnosis—**
>
> To justify the clinical diagnosis [of PTSD] and to assure uniformity of its use, the following findings should appear in the clinical examination:
>
> (1) The person has experienced an event that is outside the range of usual human experience and that would be markedly distressing to almost anyone, e.g., serious threat to one's life or physical integrity; serious threat or harm to one's children, spouse, or other close relatives and friends; sudden destruction of one's home or community; or seeing another person seriously injured or killed as the result of an accident or physical violence.

MANUAL M21–1, Part VI, ¶ 7.46(b)(1) (December 21, 1992).

Thus, pursuant to both the DSM–III–R and the MANUAL M21–1 provisions, for purposes of supporting a diagnosis of PTSD, the facts must establish that the veteran was exposed to a sufficient stressor which is defined as "an event that is outside the range of usual human experience."

*Zarycki*, 6 Vet.App. at 98–99; *see also* 38 C.F.R. § 4.125 (1993). The *Zarycki* Court did not address whether the BVA may or may not, in all instances, render a determination regarding the sufficiency of a stressor absent independent medical evidence. Nevertheless, a significant diagnostic feature of PTSD requires that the sufficiency of the stressor be *clinically* established. *Ibid.* (quoting MANUAL M21–1, Part VI, ¶ 7.46(b)(1)).

The January 1990 VA compensation and pension examination report stated that the appellant's initial stressor level, consisting of "moving armed bombs, being exposed to aircraft crashes on an aircraft carrier during a period of war, enduring circumstances, significant chronic physical illness, loss of status, and a successful lifestyle," was "extreme to catastrophic." R. at 57. The July 1991 VA psychiatric evaluation from a board of two psychiatrists concurred in the previous evaluations of PTSD related to military service. R. at 133. Therefore, at the very least, the January 1990 evaluation found the appellant's initial stressor level to be extreme to catastrophic. Although that evaluation did not differentiate between service-related stressors and non-service-related stressors, *see Shoemaker v. Derwinski*, 3 Vet.App. 248, 254–55 (1992), the Board was not then free to reject, based upon its own unsubstantiated medical conclusion, a medical diagnosis of record that had found the appellant's stressors to be sufficient to support the PTSD diagnosis. *See Colvin*, 1 Vet.App. àt 174. On remand, since the PTSD diagnosis included a clinical diagnoses regarding the sufficiency of the stressors, the BVA should comport with the Court's holding in *Colvin* by relying only on independent medical evidence in support of its findings.

## III. CONCLUSION

In sum, on remand, the BVA must ascertain whether the appellant was engaged in combat and determine whether any of the alleged stressors occurred during combat. With respect to any stressors found to have occurred during combat and to be related to such combat, the appellant's lay testimony, without further evidentiary development, will be enough to establish the occurrence of the claimed in-service stressors provided that such lay testimony is satisfactory, e.g., credible, and consistent with the circumstances, conditions, or hardships of such service. If the BVA finds that the appellant was not engaged in combat with the enemy, or that the appellant was engaged in combat with the enemy but that his claimed stressors are not related to such combat, it then will have to determine, as a preliminary matter, whether the appellant's testimony as to the claimed stressor is corroborated sufficiently by service records to establish the occurrence of the claimed stressful events. *See* MANUAL M21–1, Part VI, ¶ 7.46(e)–(f); *Hayes*, 5 Vet.App. at 66–68; *compare Ascherl v. Brown*, 4 Vet.App. 371, 378 (1993) (case remanded for BVA to address whether

the appellant was engaged in combat with the enemy, to examine the circumstances, conditions, and hardships surrounding his period of service, and, if necessary, to corroborate the occurrence of his alleged service-related stressors). In either case, the BVA will finally have to determine, subject to the analysis set forth by the Court above, whether the claimed events are sufficient stressors to support a PTSD diagnosis. The Court notes that "[a] remand is meant to entail a critical examination of the justification for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case." *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). Moreover, if the circumstances warrant, the BVA is authorized and obligated to remand the claim to the RO for further development. *See* 38 C.F.R. § 19.9 (1993); *Littke v. Derwinski,* 1 Vet.App. 90 (1990).

Accordingly, the Court denies the Secretary's motion for summary affirmance, VACATES the BVA's June 1992 decision, and REMANDS this matter for readjudication consistent with this opinion.