http://www.va.gov/vetapp16/Files4/1630467.txt

Citation Nr: 1630467 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 13-23 071 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma

THE ISSUES

1. Entitlement to service connection for prostate cancer, to include as due to toxic herbicide exposure.

2. Entitlement to service connection for diabetes mellitus, to include as due to toxic herbicide exposure.

3. Entitlement to service connection for a respiratory disorder, diagnosed as asthma and chronic obstructive respiratory disorder (COPD), to include as related to asbestos exposure.

4. Entitlement to service connection for an acquired psychiatric disorder, diagnosed as posttraumatic stress disorder (PTSD) and depression. 

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

Veteran

ATTORNEY FOR THE BOARD

B. Thomas Knope, Counsel

INTRODUCTION

The Veteran served on active duty from March 1966 to October 1972.

This matter is on appeal from a September 2011 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma. 

The Veteran testified before the undersigned Veterans Law Judge in September 2011. A transcript of the hearing is of record.

The issues of entitlement to service connection for prostate cancer, diabetes mellitus and an acquired psychiatric disorder were remanded by the Board in March 2015 for further development and are now ready for disposition.

In that same March 2015 decision, the issue of entitlement to service connection for a respiratory disorder was denied by the Board. The Veteran appealed this decision to the Court of Appeals for Veterans Claims (Court) which, in a November 2015 Order, vacated the Board's decision and remanded for additional development. This issue was subsequently remanded by the Board in February 2016 for the necessary development, and is also now ready for disposition. 

This appeal is comprised entirely of documents contained in the Virtual VA paperless claims processing system as well as the Veterans Benefits Management System (VBMS). Accordingly, any future documents should be incorporated in the Veteran's VBMS file. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014 & Supp. 2015).

The issue of entitlement to service connection for an acquired psychiatric disorder other than PTSD is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. The Veteran's diagnosed PTSD has not been associated to a corroborated stressor event. 

2. There is insufficient evidence to conclude that the Veteran was exposed to toxic herbicides in the Republic of Vietnam or in Korea.

3. It is at least as likely as not that the Veteran's asthma began during active duty service and has been present, to some degree, since that time.

4. The Veteran's diabetes mellitus, prostate cancer and COPD were not shown in service or for many years thereafter, and are not related to active duty service, to include any asbestos exposure. 

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for prostate cancer, to include as due to toxic herbicide exposure, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103(a), 5103A (West 2014 & Supp. 2015); 38 C.F.R. §§ 3.159, 3.303, 3.304, 3.307, 3.309 (2015).

2. The criteria for entitlement to service connection for diabetes mellitus, to include as due to toxic herbicide exposure have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103(a), 5103A (West 2014 & Supp. 2015); 38 C.F.R. §§ 3.159, 3.303, 3.304, 3.307, 3.309 (2015).

3. The criteria for entitlement to service connection for asthma have been met. 38 U.S.C.A. §§ 1110, 1131, 5103(a), 5103A (West 2014 & Supp. 2015); 38 C.F.R. §§ 3.159, 3.303, 3.304, 3.307 (2015).

4. The criteria for entitlement to service connection for COPD have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103(a), 5103A (West 2014 & Supp. 2015); 38 C.F.R. §§ 3.159, 3.303, 3.304, 3.307 (2015).

5. The criteria for entitlement to service connection for PTSD have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103(a), 5103A (West 2014 & Supp. 2015); 38 C.F.R. §§ 3.159, 3.303, 3.304 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Service Connection

The Veteran is claiming entitlement to service connection for prostate cancer and diabetes, which he contends is related to his exposure to toxic herbicides. He is also claiming service connection for a respiratory disorder that is related to asbestos exposure, where such exposure has been previously recognized by the Board. Finally, he is claiming entitlement to service connection for an acquired psychiatric disorder, which he attributes to his experiences while in combat in the Republic of Vietnam. 

Under the relevant laws and regulations, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131 (West 2014 & Supp. 2015). Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004); Caluza v. Brown, 7 Vet. App. 498, 505 (1995).

Certain chronic diseases, including diabetes mellitus, are subject to presumptive service connection if manifest to a compensable degree within one year from separation from service even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1112, 1113; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). 

Moreover, for such chronic diseases, an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology if the disability claimed qualifies as a chronic disease listed in 38 C.F.R. § 3.309(a); See 38 C.F.R. § 3.303(b); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2014). 

Toxic Herbicide Exposure

As it has been the Veteran's primary assertion that his prostate cancer and diabetes mellitus is related to his exposure to toxic herbicides, the Board addresses this issue first. 

VA regulations state that a veteran who served in the Republic of Vietnam during the period from January 9, 1962 to May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent containing dioxin, 2,4-Dichlorophenoxyacetic acid or 2,4,5-Trichlorophenoxyacetic acid, and may be presumed to have been exposed during such service to any other chemical compound in an herbicide agent, unless there is affirmative evidence to the contrary. 38 U.S.C.A. § 1116; 38 C.F.R. § 3.307(a)(6). Notably, these were the key compounds found in the tactical herbicides used during that time, with "Agent Orange" being the most common.

Exposure to toxic herbicides may also be recognized to veterans who, during active military, naval, or air service, served between April 1, 1968, and August 31, 1971, in a unit that, as determined by the Department of Defense, operated in or near the Korean demilitarized zone (DMZ) in an area in which herbicides are known to have been applied during that period. 38 C.F.R. § 3.307(a)(6)(iv). The units or other military entities that the DoD has identified as operating in or near the Korean DMZ during the qualifying time period are listed in a table in the VA Adjudication Procedure Manual, M21-1MR (M21-1), Part IV.ii.1.H.4.b (April 29, 2016). When a Veteran claims exposure in Korea, and his or her service was either not between April 1, 1968, and August 31, 1971, or not in a unit or entity listed in the table, VA is to send a request to the U.S. Army and Joint Service Records Research Center (JSRRC) for verification of exposure to herbicides. Id. 

If toxic herbicide exposure is recognized under VA regulations, service connection is warranted on a presumptive basis (subject to the requirements of 38 C.F.R. § 3.307(a)) for diseases such as chloracne or other acneform diseases consistent with chloracne, ischemic heart disease, Hodgkin's disease, non-Hodgkin's lymphoma, porphyria cutanea tarda, multiple myeloma, soft-tissue sarcomas, early-onset peripheral neuropathy, Parkinson's disease, B-cell leukemias, respiratory cancers and, as potentially relevant here, Type 2 diabetes and prostate cancer. 38 C.F.R. § 3.309(e).

After a review of the relevant evidence, service connection for prostate cancer and diabetes mellitus is not warranted on a presumptive basis, as toxic herbicide exposure cannot be confirmed. The Veteran's personnel records indicate that he served in the continental United States until he was assigned to the 5th Battalion, 1st Artillery in Europe from January 1967 to January 1970. 

After a brief tour at Ft. Bliss, Georgia, he was assigned to U.S. Army Strategic Communications Command (USASTRATCOM) in Korea from August 1970 to September 1971. 

While the Board recognizes that the Veteran served in the Republic of Korea during the time period between April 1, 1968, and August 31, 1971, there is insufficient evidence to indicate that he ever operated in the DMZ vicinity. In particular, the Veterans unit is not one of the units mentioned in M21-1, Part IV.ii.1.H.4.b. In fact, no communications unit was noted to have operated near the DMZ during that time. Moreover, in October 2015, the Joint Services Records and Research Center (JSRRC) informed VA that a search of the National Archives and Records Administration (NARA) failed to locate any records from the Veteran's unit.

Additionally, a review of the 1971 8th U.S. Army chronology did not document soldiers from the Veteran's unit to have operated near the DMZ, nor was there any indication reflecting the handling or storage of toxic herbicides during that time. As such, there is insufficient evidence to establish toxic herbicide exposure while the Veteran was stationed in Korea. In fact, the best evidence, as cited above, provides evidence against this claim. 

Next, while the Veteran has made many assertions about performing military operations in the Republic of Vietnam, there is simply no evidence to corroborate these assertions. Specifically, at his hearing before the Board in September 2014, he stated that, while stationed in Korea, he flew into the Republic of Vietnam on three occasions from September 1969 to January 1970. However, he acknowledged that since such missions were classified in nature, there were likely no records to be found. 

While attempts to verify the Veteran's service were made to the JSRRC, VA received a response in January 2013 that there was no such information. At the JSRRC's recommendation, VA requested Unit morning reports from the National Personnel Records Center (NPRC). However these records also did not yield any helpful information. It is also notable that the Veteran requested records from the Central Intelligence Agency (CIA), which responded in January 2012 that it had no records in its possession that would reflect service in the Republic of Vietnam. An application to the Army Board for Correction of Military Records in February 2011 also specifically noted that there was no evidence reflecting service in the Republic of Vietnam. 

The Board does not wish to convey the notion that it believes the Veteran to be untruthful about his recollections, his recollection of events simply seems to be inaccurate. "At best the human memory is fallible, and courts and juries can only demand that the material facts be accurately remembered and correctly given in evidence. It is difficult to find two men, however conscientious, who will give precisely, and in all respects, the same account of a transaction to which they are eye-witnesses. It is also true that few men can give, in every minutiae, two identical accounts of one occurrence, especially when those accounts are given at different periods." U.S. v. Hall, 44 F. 864, 876 (D.C.Ga. 1890). 

Rather, when evaluating non-medical evidence, VA has a duty to weigh the Veteran's lay statements against other evidence, including the absence of military records supporting his assertions. See Caluza v. Brown, 7 Vet. App. 498, 506 (1995); see also Bardwell v. Shinseki, 24 Vet. App. 36, 40 (2010). Here, there is simply not enough evidence for the Board to conclude that the Veteran was physically in the Republic of Vietnam without any sort of other objective evidence of such service as there is now significant evidence against this claim, as cited above, that the Board simply cannot ignore. See Seng v. Holder, 584 F.3d 13, 19 (1st Cir.2009) (notwithstanding the declarant's intent to speak the truth, statement may lack credibility because of faulty memory). [cited by C.J. Kasold in Wohlwend v. Shinseki, No. 08-356, 2014 WL 1931182 at *3 (May 15, 2014)]. Therefore, service connection for prostate cancer and diabetes mellitus are not warranted on a presumptive basis under 38 C.F.R. §§ 3.307 and 3.309. 

PTSD

In order to establish service connection for PTSD, there must be a medical diagnosis of PTSD in accordance with 38 C.F.R. § 4.125(a); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f) (2015). A diagnosis of PTSD must meet the requirements of the American Psychiatric Association's Diagnostic and Statistical Manual on Mental Disorders, Fourth Edition (DSM-IV). 38 C.F.R. § 4.125(a) (2015).

Under the DSM-IV, a valid diagnosis of PTSD requires that a person has been exposed to a traumatic event in which both of the following were present: (1) the person experienced, witnessed, or was confronted with an event or events that involved actual or threatened death or serious injury, or a threat to the physical integrity of himself or others, and (2) the person's response involved intense fear, helplessness, or horror. If the evidence establishes that the veteran engaged in combat with the enemy and the claimed stressor is related to that combat, in the absence of clear and convincing evidence to the contrary, and provided that the claimed stressor is consistent with the circumstances, conditions, or hardships of the veteran's service, the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. 38 C.F.R. § 3.304(f)(1) (2015).

Where VA determines that the Veteran did not engage in combat with the enemy or that the Veteran engaged in combat with the enemy but the claimed stressor is unrelated to the combat, the Veteran's lay testimony alone will not be enough to establish the occurrence of the alleged stressor. Instead, the record must contain evidence that corroborates the Veteran's testimony as to the occurrence of the claimed stressor. 38 U.S.C.A. § 1154(b) (West 2014 & Supp. 2015); 38 C.F.R. § 3.304(d), (f) (2015); West v. Brown, 7 Vet. App. 70 (1994).

Finally, if a stressor claimed by a veteran is related to a fear of hostile military or terrorist activity that is consistent with the places, types, and circumstances of a veteran's service, and a VA psychiatrist or psychologist (or a psychiatrist or psychologist with whom VA has contracted) confirms that the claimed stressor is adequate to support a diagnosis of PTSD that is related to the claimed stressor, then the requirement for corroborating the stressor is eliminated. "Fear of hostile military or terrorist activity" means that a veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft, and the veteran's response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror. 38 C.F.R. § 3.304(f)(3) (2015).

In this case, service connection is not warranted for PTSD, as there is inadequate evidence of a corroborated stressor that can serve as the basis for such a diagnosis. 

Specifically, at his VA examination in July 2015, the Veteran stated that he performed highly classified operations in the Republic of Vietnam, which included killing over 300 people with a machete and observing aircraft dropping white phosphorus grenades on enemy personnel. 

Throughout his time there, he felt the need to remain vigilant, and that the whole process was "quite gruesome." 

The Board notes that the Veteran was diagnosed with PTSD at the July 2015 VA examination. However, as was mentioned above, there is simply no evidence that the Veteran was ever in the Republic of Vietnam, let alone experienced any of the stressors he has described. Notably, neither the JSRRC nor the NPRC could locate records of any sort that would even suggest that the Veteran had such service, or that any such temporary missions occurred at all, or that he killed so many people with a machete. 

Moreover, the Veteran's personnel records do not reflect any records or awards that would even suggest such service. Indeed, in a Request for Discharge in October 1972, no records were available to reflect that he was ever engaged in combat operations with enemy forces or that he was in an environment where there would have been a reasonable fear of hostile military activity. Therefore, as there is no corroborated evidence of service in the Republic of Vietnam, which is the basis for his underlying stressor event, service connection for PTSD is not warranted. 

Active Duty Service

Finally, although though his primary assertions has been addressed above, the Veteran is not precluded from establishing service connection for prostate cancer or diabetes mellitus with proof of actual direct causation as due to active duty service. See Combee v. Brown, 34 F.3d 1039, 1041-42 (Fed. Cir. 1994). 

As for the Veteran's assertions regarding his respiratory symptoms and their relationship to asbestos exposure, the VA Adjudication Procedure Manual, M21-1 (M21-1), provides guidance on how to adjudicate claims based on exposure to some environmental hazards, as well as specific guidance in adjudicating asbestos-related claims. M21-1, Part IV.ii.1.I.3 (May 26, 2016). However, there is no VA regulation that allows service connection on a presumptive basis for disorders resulting from exposure to environmental chemicals. 38 C.F.R. §§ 3.307, 3.309 (2015). Rather, service connection based on chemical exposure may be established only if a current disability is shown by the evidence to be related to chemical exposure during service.

As an initial matter, the Board stresses that the Veteran has actually been diagnosed with two separate and distinct respiratory disorders, as he was diagnosed with COPD with "an underlying component" of asthma at a VA examination in February 2016. Based on the evidence of record, service connection for asthma, a restrictive airway disorder, is warranted. 

Specifically, the Board notes that the Veteran was seen for complaints of bronchitis in August 1968, where the examining physician strongly suspected "underlying asthma." 

While some of the Veteran's recollection of events during service may be at fault, the Board on this issue has evidence. 

This fact, in conjunction with the Veteran's statements that he has used albuterol inhalers since service, leads to the conclusion that mild asthma, or something like that, was first clinically noted in service and has existed to this day. As such, service connection is warranted on this basis. However, the Veteran should be aware that benefits will be granted only for the respiratory symptoms he displays relative to his asthma, and any respiratory symptoms that are not related to this specific disorder will not be subject to disability benefits. 

Next, the Board also determines that service connection is not warranted for COPD, nor is it warranted for prostate cancer or diabetes mellitus based on any event or injury during active duty service. 

First, the service treatment records do reflect complaints of bronchitis in August 1968 where, as noted above, an examining physician stated that "underlying asthma" was strongly suspected. However, there is no evidence of any obstructive respiratory disorder such as COPD at any time during service. Additionally, the service treatment records do not reflect complaints of, treatment for, or a diagnosis related to diabetes mellitus or prostate cancer or an acquired psychiatric disorder in service. Significantly, the Veteran's separation physical examination in October 1972 fails to document any complaints of or observed symptoms related to these disorders. 

In fact, the post-service evidence does not reflect symptoms related to a respiratory disorder, prostate cancer or diabetes mellitus for many years after the Veteran left active duty service. Specifically, according to a VA examination in February 2016, the Veteran did not develop diabetes mellitus until 2005, and prostate cancer was not identified until 2010. At a VA examination in July 2013, the examiner noted that the Veteran was first diagnosed with a COPD in 2003. 

The Board emphasizes that this first indication of any of these disorders is approximately 31 years after he left active duty. 

As such, a continuity of symptoms is not shown based on the clinical evidence. Indeed, the Veteran has never asserted that his prostate cancer, diabetes mellitus or an obstructive respiratory disorder has been present since active duty. Therefore, continuity is not established based on the clinical evidence of record or the Veteran's statements. 

Next, service connection may also be granted when the evidence establishes a medical nexus between active duty service (to include any exposure to asbestos) and current complaints. In this case, the Board finds that the weight of the competent evidence does not attribute the Veteran's claimed disorders to active duty, despite his contentions to the contrary. 

In making this conclusion, the Board places significant value on the opinions of a VA examiner who evaluated the Veteran's respiratory symptoms in July 2013. On that occasion, the examiner concluded that the Veteran's COPD was less likely than not related to his asbestos exposure. In providing this opinion, the examiner noted that asbestosis is a restrictive lung disease, COPD is obstructive in nature, and that the notion that COPD could be related to asbestos exposure was "not biologically possible." 

At a more recent VA examination in February 2016, another VA examiner added that the Veteran's COPD was also less likely than not related to any other occurrence in service, noting that the Veteran's COPD had its onset much later in life, and was very likely related to his long standing habit of cigarette smoking. The Board also independently notes that obstructive airway symptoms were never noted in service, and the Veteran's in-service complaints were specifically asthmatic in nature. 

As for the Veteran's diabetes mellitus and prostate cancer, the Board relies on the observations of a VA examiner in February 2016, who concluded that neither disorder was related to active duty service. Specifically, the examiner noted that the Veteran did not develop diabetes mellitus or prostate cancer for many years after active duty. To the contrary, the primary risk factor for diabetes was obesity (which the Veteran is, according to his Body Mass Index), and that tobacco use may also increase the incidence of diabetes mellitus. Moreover, the risk of prostate cancer elevates as men age and, as with diabetes mellitus, obesity and cigarette smoking have been known to increase likelihood of development. 

The Board finds that these examination are adequate for evaluation purposes. Specifically, the examiner reviewed the claims file, interviewed the Veteran, and conducted a physical examination. There is no indication that the VA examiner was not fully aware of the Veteran's past medical history or that he misstated any relevant fact.

In arriving at this conclusion, the Board has also considered the statements made by the Veteran relating his COPD, prostate cancer and diabetes mellitus to his active service. The Federal Circuit has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (quoting Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007)).

In this case, however, the Veteran is not competent to provide testimony regarding the etiology of COPD, prostate cancer and diabetes mellitus. See Jandreau, 492 F.3d at 1377, n.4. Because COPD, prostate cancer and diabetes mellitus are not diagnosed by unique and readily identifiable features, it does not involve a simple identification that a layperson is competent to make. Therefore, the unsubstantiated statements regarding the claimed etiology of the Veteran's COPD, prostate cancer and diabetes mellitus are found to lack competency.

In light of the above discussion, the Board concludes that the preponderance of the evidence is against the claim for service connection and there is no doubt to be otherwise resolved. As such, the appeal is denied.

VA Duty to Notify and Assist

The Board has given consideration to the Veterans Claims Assistance Act of 2000 (VCAA), which includes an enhanced duty on the part of VA to notify a veteran of the information and evidence necessary to substantiate claims for VA benefits. 38 U.S.C.A. §§ 5103, 5103A (West 2014 & Supp 2015); 38 C.F.R. § 3.159 (2015). The VCAA also redefines the obligations of VA with respect to its statutory duty to assist veterans in the development of their claims. 38 U.S.C.A. §§ 5103, 5103A (West 2014).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2014 & Supp. 2015); 38 C.F.R. § 3.159(b) (2015); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. This notice must be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

In this case, the Veteran was provided notice letters informing him of both his and VA's obligations. Moreover, there is no indication of a failure to notify. See Scott v. McDonald, 789 F.3rd 1375 (Fed. Cir. 2015). Therefore, additional notice is not required and any defect in notice is not prejudicial. 

With respect to the duty to assist, VA must obtain "records of relevant medical treatment or examination" at VA facilities. 38 U.S.C.A. § 5103A(c)(2). All records pertaining to the conditions at issue are presumptively relevant. See Moore v. Shinseki, 555 F.3d 1369, 1374 (Fed. Cir. 2009); Golz v. Shinseki, 590 F.3d 1317 (Fed. Cir. 2010). In addition, where the Veteran "sufficiently identifies" other VA medical records that he or she desires to be obtained, VA must also seek those records even if they do not appear potentially relevant based upon the available information. Sullivan v. McDonald, 815 F.3d 786, 793 (Fed. Cir. 2016) (citing 38 C.F.R. § 3.159(c)(3)). 

Here, the Board finds that all necessary assistance has been provided to the Veteran. Specifically, all VA treatment records and relevant private treatment records have been obtained. It is noted that at a psychiatric evaluation in May 2009, the Veteran stated that he has received disability compensation from the Social Security Administration (SSA) since 1979. However, since he has not asserted that he had any of the disorders currently being adjudicated in 1979, such records would not be relevant to these issues. See Golz v. Shinseki, 590 F.3d 1317 (Fed. Cir. 2010).

The Veteran has also been provided with VA examinations. Upon review of these examination reports, the Board observes that the examiners reviewed the Veteran's past medical history, recorded his current complaints and history, conducted appropriate evaluations and rendered appropriate diagnoses and opinions consistent with the remainder of the evidence of record. The VA examination reports are therefore adequate for the purpose of rendering a decision on appeal. 38 C.F.R. § 4.2 (2015); Barr v. Nicholson, 21 Vet. App. 303 (2007).

Hence, no further notice or assistance is required to fulfill VA's duty to assist in the development of the above-cited claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

ORDER

Service connection for prostate cancer, to include as due to toxic herbicide exposure, is denied.

Service connection for diabetes mellitus, to include as due to toxic herbicide exposure, is denied.

Service connection for asthma is granted

Service connection for COPD, to include as related to asbestos exposure, is denied.

Service connection for PTSD is denied. 

REMAND

While the Veteran acquired psychiatric disorder claim has centered mostly on the assertion that he has PTSD, he was diagnosed with depression, and the Board notes that all diagnosed psychiatric disorders must be considered when a claim is submitted. Clemons v. Shinseki, 23 Vet. App. 1 (2009) (a claim for service connection for a psychiatric disability encompasses all psychiatric disabilities that may reasonably be encompassed by evidence of record).

In this regard, the service treatment reflects that he was seen by a physician in June 1968 for nervousness because he had "working too hard." Although the treating physician discounted these symptoms as an attempt to manipulate his chain of command, it is sufficient to warrant an opinion from a VA examiner as to whether his depression may be related to these in-service symptoms. McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

While the Veteran did undergo a VA psychiatric examination in July 2015, this was directed almost exclusively toward his PTSD symptoms. Therefore a new opinion is necessary. 

Moreover, at a May 2009 evaluation, the Veteran stated that he has received disability benefits from the SSA since 1979. VA is required to obtain relevant records held by any Federal department or agency that the claimant adequately identifies and authorizes the Secretary to obtain. Here, there is a possibility that some records in that file may be relevant to the claim being remanded. Therefore, these records must be acquired before the claims may be adjudicated. 38 U.S.C.A § 5103A(c)(3); Diorio v. Nicholson, 20 Vet. App. 193, 199-200 (2006); Tetro v. Gober, 14 Vet. App. 100, 108-09 (2000); Murincsak v. Derwinski, 2 Vet. App. 363, 372 (1992).

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain all treatment records from the VA Medical Center in Muskogee, Oklahoma, since June 2015, as well as from any VA facility from which the Veteran has received treatment.

If the Veteran has received additional private treatment, he should be afforded an appropriate opportunity to submit them.

2. Obtain the Veteran's SSA records including the medical evidence used to determine disability eligibility and ensure that they are entered into his VBMS file.

3. Schedule the Veteran for a VA examination to determine the nature, extent, onset and etiology of his depression or any other psychiatric disorder other than PTSD. The claims file must be provided to the examiner for review. All indicated studies deemed necessary by the examiner should be performed, and all findings of these tests should be reported in detail.

The examiner should specifically provide opinions as to whether it is at least as likely as not (i.e. a 50 percent probability or greater) that the Veteran's depression or any other psychiatric disorder other than PTSD, had its onset in, or is otherwise etiologically related to, his active service.

The examiner must also consider the Veteran's lay statements regarding these disorders. If the examiner cannot provide any of the requested opinions without resorting to speculation, he or she should provide an explanation stating why this is so. In so doing, the examiner should explain whether the inability to provide a more definitive opinion is the result of a need for additional information or that he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question(s).

4. After the above action is completed, if the claims are not fully granted, a supplemental statement of the case should be issued, and the claims file should be returned to the Board for further appellate consideration.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
JOHN J. CROWLEY
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs